Dyson vs. Beckam.

---

ABRAHAM DYSON, plaintiff in error, vs. SUSANNAH E. BECKAM, Executrix of SOLOMON G. BECKAM, deceased, defendant in error.

[1.] The formal words of the jurat to answers to interrogatories may follow the names of the commissioners, as well as precede them.

[2.] A nonsuit should not be awarded, if there be any evidence upon which a verdict for the plaintiff could be rendered.

Complaint. In Calhoun Superior Court. Tried before Judge CLARKE. September Term, 1866.

This was a suit upon an open account for $374.38, the main item of which is for work and labor on lot of land No. 265, 4th district, Calhoun county, $350.00.

On the trial, interrogatories tendered by the plaintiff were objected to, on the ground that the jurat was not certified to by the commissioners.

The names of the commissioners were signed on the left, immediately under the interrogatories, followed by the jurat, arranged thus:

"A. B. Com.

" C. D. Com.

Sworn to and subscribed," &c., &c.

The Court sustained the objection—ruled out the interrogatories, and plaintiff excepted.

The defendant objected to the statement in the depositions of Benjamin H. Jones, hereinafter set forth, and to the same statement made by several of the witnesses, " That the land on which plaintiff lived and put the improvements belonged to Solomon G. Beckam," and to all parol evidence, as being incompetent to show title or interest of Beckam in the land. The Court sustained the objection, but allowed the witnesses to make the statement, saying that he would regulate or qualify the matter in his charge.

The plaintiff introduced the following evidence:

*Thomas M. Maund* says plaintiff went upon the lot of land belonging to Beckam, in the life time of Beckam, and put improvements thereon, consisting of a dwelling house, kitchen, smoke house, horse lot, stable and shelter, a well, a garden, and cleared up five or six acres of land, worth, altogether, $350.00. After the improvements were made, Beckam sold his settlement of land, and with it his lot (No. 265.) After this sale witness heard Beckam say to plaintiff that he would pay him (plaintiff) out; that three hundred or five hundred dollars was no money to him (plaintiff.) Wit-

ness understood this conversation to relate to paying plaintiff for the improvements on the lot.

*Kinion Strickland* says that plaintiff put improvements worth $300 on lot of land No. 265, belonging to Beckam. In a conversation between plaintiff and Beckam, soon after plaintiff commenced the improvements, Beckam said he (Beckam) had promised to clear him (plaintiff) twenty acres of land; but, finding he could not do so, offered instead to let plaintiff cultivate a part of Murchison place. When Beckam sold out he sold lot No. 265 also.

*David E. Lewis* says that the improvements were worth $300. Beckam sold this lot with the improvements when he sold his other land. Plaintiff was on the lot two, or a part of two years, using the improvements as he placed them there; but they were worth nothing for rent, as he was carrying on the improvements all the time. Witness had a conversation with Beckam and plaintiff shortly after Beckam sold out. Beckam, in speaking of plaintiff's removal from the lot, said that he (Beckam) would pay him (plaintiff) out; that three hundred dollars, or five hundred dollars was no money to him (Beckam.)

*Benjamin H. Jones—deposition*—Plaintiff lived on and improved a lot of land belonging to Solomon Beckam, during his life time. He put up a dwelling, kitchen, smoke house, corn crib, stable and well, garden and yard pailed in, and made a small clearing—all worth five hundred dollars. Witness did not hear Beckam say anything about it. Plaintiff went on the land in the woods. Witness lived about four miles distant.

The plaintiff here closed, and defendant moved for a nonsuit, which was ordered, and plaintiff excepted.

C. B. Wooten, for plaintiff in error.

Strozier and Dunn, for defendant.

Walker, J.

[1.] The interrogatories of certain witnesses were rejected because the *jurat* was not certified to by the commissioners,  The ground of objection was that the names of the commissioners were signed immediately above, and not below the words " sworn to," &c.  No question was made as to the fairness of the testimony ; no denial that the statement that the answers were sworn to by the witnesses was made by the commissioners themselves.  We apprehend the difficulty arose from the want of experience on the part of the commissioners, who were probably persons not accustomed to the execution of interrogatories.  They, however, make the proper certificate ; and the fact that it follows, rather than precedes their names, is not sufficient to exclude the testimony.

[2.] Ought the Court to have nonsuited the plaintiff? The rule on this subject is, " that if there be any evidence upon which a verdict could be rendered, the case should not be withholden from the jury."  *Tyson et. al. vs. Yawn*, 15 *Ga. R.* 493.  Was there any evidence in this case upon which a verdict could be rendered ?  There is an abundance of proof that 'plaintiff did a considerable amount of work on the land of defendant's testator, and the only question is whether it was done at his " instance and request."  Two or three of the witnesses speak of the testator promising to " pay the plaintiff out," &c., but these promises were made after the work had been done.  One witness—Kinion Strickland—says (I copy from the bill of exceptions) " that he heard a conversation between plaintiff and said Beckam, *soon after plaintiff commenced* the improvements, in which Beckam said that he had promised plaintiff, *when he came upon said lot of land to make the improvements*, that he would clear him twenty acres of land ; that he found he could not do so ; but instead thereof he would let plaintiff cultivate a part of the Murchison place."  Without deciding whether this was sufficient evidence or not, we think there is evidence upon which a verdict might be rendered, and that, therefore, the plaintiff had a right to have a jury pass upon

the merits of his case; and that the Court, in denying him this right, committed error.

Judgment reversed.